UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

CHOICE L. CAUSEY,

      Plaintiff,

v.

ARTHUR DORE,

      Defendant.

---

**THIRD PARTY ANDREW DODSON'S
MOTION TO QUASH THIRD PARTY SUBPOENA
(INCORPORATING AUTHORITIES)**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ........................................................................ II

QUESTION PRESENTED ........................................................................... V

THE PARTIES ........................................................................................ 1

INTRODUCTION .................................................................................... 1

ARGUMENT .......................................................................................... 3

    I.    MOTION TO QUASH: The Court should quash the subpoena
        because the Plaintiff failed to tender the required witness fee and
        because the subpoena imposes an undue burden on a third party's
        constitutional and statutory interests ................................................... 3

        A.    *Improper Service*: Plaintiff failed to tender the required
              witness fee and mileage with the subpoena................................... 3

        B.    *Undue Burden*: The subpoena imposes an undue burden on a
              third-party journalist's interests under the First
              Amendment and statutory privileges .......................................... 3

    II.   PROTECTIVE ORDER: Alternatively, the Court should enter a
        protective order that protects a third-party journalist's
        newsgathering interests under the First Amendment ................................ 9

CONCLUSION ....................................................................................... 10

## INDEX OF AUTHORITIES

**Cases**

*Anaconda Minerals Co.* v. *Stoller Chem. Co.*,
  990 F.2d 1175 (10th Cir. 1993) ................................................................. 8

*Branzburg* v. *Hayes*,
  408 U.S. 665 (1972) ....................................................................................5

*Compuware Corp.* v. *Moody's Investor Servs., Inc.*
  222 F.R.D. 124 (E.D. Mich. 2004) .............................................................7

*Derderian* v. *Genesys Healthcare Sys.*,
  263 Mich. App. 364 (2004) ......................................................................... 8

*Downs* v. *Bel Brands USA, Inc.*,
  613 F. Appx. 515 (6th Cir. 2015) ............................................................... 8

*Gameologist Group, LLC* v. *Scientific Games Int'l, Inc.*,
  No. 10-0015, 2010 WL 3827961 (D.N.M. Jul. 28, 2010) ...........................3

*Hickle* v. *American Multi-Cinema, Inc.*,
  927 F.3d 945 (6th Cir. 2019) ......................................................................5

*Hunt* v. *Cromartie*,
  526 U.S. 541 (1999) ................................................................................... 4

*Hustler Magazine, Inc.* v. *Falwell*,
  485 U.S. 46 (1988) ..................................................................................... 8

*In re DaimlerChrysler AG Securities Litigation*,
  216 F.R.D. 395 (E.D. Mich. 2003) .............................................................7

*In re Dennis*,
  330 F.3d 696 (5th Cir. 2003) ......................................................................3

*In re Photo Marketing Ass'n Int'l*,
  120 Mich. App. 527 (1982) ..........................................................................5

*Ireland* v. *Edwards*,
  230 Mich. App. 607 (1998) ......................................................................... 8

*Landco Equity Partners, LLC* v. *City of Colo. Springs*,
    259 F.R.D. 510 (D Colo. 2009) ......................................................................... 9

*Lansing Schs. Educ. Ass'n* v. *Lansing Bd. of Educ.*,
    487 Mich. 349 (2010) ....................................................................................... 7

*Marketos* v. *American Employers Insurance Co.*,
    185 Mich. App. 179 (1990) .............................................................................. 7

*Meyer* v. *Hubbell*,
    117 Mich. App. 699 (1982) .............................................................................. 8

*Nichols* v. *Moore*,
    334 F. Supp. 2d 944 (E.D. Mich. 2004) ........................................................... 8

*NLRB* v. *Midland Daily News*,
    151 F.3d 472 (6th Cir. 1998) ........................................................................... 5

*Re/Max Int'l, Inc.* v. *Century 21 Real Estate Corp.*,
    846 F. Supp. 910 (D. Colo. 1994) ................................................................... 5

*Seamons* v. *Snow*,
    206 F.3d 1021 (10th Cir. 2000) ....................................................................... 4

*Seattle Times Co.* v. *Rhinehart*,
    467 U.S. 20 (1984) ........................................................................................... 9

*Stickley* v. *State Farm Mut. Auto Ins. Co.*,
    505 F.3d 1070 (10th Cir. 2007) ....................................................................... 8

*Tedder* v. *Odel*,
    890 F.2d 210 (9th Cir. 1989) ........................................................................... 3

*Tribulak* v. *Minirth–Meier–Rice Clinic*,
    111 F.3d 135 (Table), 1997 WL 177456 (8th Cir. Apr. 15, 1997) ................... 3

*Windsor* v. *Martindale*,
    175 F.R.D. 665 (D. Colo. 1997) ...................................................................... 3

*Zerilli* v. *Smith*,
    656 F.2d 705 (D.C. Cir. 1981) ......................................................................... 5

**Statutes**

28 U.S.C. § 1821 ...................................................................................................................3

Colo. Rev. Stat. § 13-90-119(2)–(3)......................................................................................7

Mich. Comp. Laws § 767.5a(1) ............................................................................................7

**Rules**

FED. R. CIV. P. 8(b)(5)........................................................................................................ 4

FED. R. CIV. P. 45(b)(1) .......................................................................................................3

FED. R. CIV. P. 45(d)(2)(B) ................................................................................................ 4

FED. R. CIV. P. 45(d)(3)(A)(iv) .......................................................................................... 4

FED. R. CIV. P. 56(e)(2)....................................................................................................... 4

FED. R. EVID. 801(d)(2)(A) ................................................................................................ 4

FED. R. EVID. 902(6) ........................................................................................................... 4

## QUESTION PRESENTED

QUESTION NO. 1: Should the Court quash the third-party deposition subpoena directed to reporter Andrew Dodson for improper service or because it imposes an undue burden on him by infringing upon his interests under the First Amendment and applicable reporter's shield law?

QUESTION NO. 2: If not, should the Court enter a protective order that cabins the deposition in time and scope to safeguard Dodson's interests while permitting the parties to obtain the very limited information relevant to their case?

Under Fed. R. Civ. P. 45(d)(3), third-party journalist Andrew Dodson respectfully moves for an order quashing a subpoena for his deposition.

In the alternative, under Fed. R. Civ. P. 26(c)(1), Dodson requests a protective order that would place limits on his deposition to protect his interests under the First Amendment and applicable statutory and common-law privileges.

Consistent with Local Civil Rule 7.1(a), counsel for Dodson contacted counsel for Plaintiff Choice L. Causey and proposed an affidavit in lieu of a deposition that would provide the information Plaintiff seeks while protecting the interests and privileges Dodson asserts in this Motion. Plaintiff's counsel declined the proposal, necessitating this Motion.

As grounds, for this Motion, third-party Andrew Dodson shows as follows:

## THE PARTIES

Plaintiff Choice Causey is a Texas resident.

Defendant Arthur Dore is a Michigan resident.

Third-party Andrew Dodson resides in Colorado and is employed as a journalist for the *Denver Business Journal*, in Denver, Colorado. At all times relevant to this proceeding, he resided in Michigan and was employed as a journalist for the *Bay City Times* in Bay City, Michigan.

## INTRODUCTION

Invoking diversity jurisdiction, Causey sued Dore in the Eastern District of Michigan for invasion of privacy.[1] Causey alleges that: (1) Causey and Dore were parties to a lease agreement in March 2016, under which Dore leased the Prime Event Center in Bay City, Michigan, to Causey; (2) Dore terminated the lease in August 2016 because of pressure from city officials over potential gang activity at an upcoming event to be held at the center; but (3) Dore told Dodson that he terminated the lease because Causey had not paid rent due under the agreement.[2] On

---

[1]    Exhibit 1, Compl. ¶¶ 13–22.

[2]    *Ibid.*

August 16, 2016, Dodson wrote an article in the *Bay City Times* that included Dore's statement about unpaid rent.[3]  Causey alleges that the unpaid rent statement is untrue and placed him in a false light.

Causey has served Dodson with a subpoena for deposition testimony.[4] Dodson objects to the subpoena as technically invalid because Plaintiff did not include the required witness fee. Dodson also objects to the subpoena as unduly burdensome for four reasons. First, his deposition would produce only cumulative evidence. Second, the First Amendment provides Dodson with a qualified privilege, which Plaintiff has not overcome. Third, even if Causey could overcome the qualified privilege, a statutory reporter's privilege further shields Dodson's testimony. Finally, it appears that Causey's claim expired two years ago, and he should be required to prove to the Eastern District of Michigan that his claim is viable before a third party is burdened with discovery that affects First Amendment interests and privileges.

Under these circumstances, Dodson should not be forced to take time off from work, hire a lawyer, and answer questions at a deposition where (1) the only pertinent fact is already established for evidentiary purposes, and (2) any other information he could be asked about is privileged.  The Court should quash the subpoena and relieve Dodson of this undue burden. Alternatively, it should enter a protective order preventing the parties from questioning him about matters that are privileged and limit questioning by both parties to whether the quotes in the article are accurate.

---

[3]     Exhibit 2, Andrew Dodson, Former Event Center Manager Files Race Discrimination Lawsuit Against City, *Bay City Times* (Aug. 16, 2016).

[4]     Exhibit 3, Subpoena.

## ARGUMENT

I.   **MOTION TO QUASH: The Court should quash the subpoena because the Plaintiff failed to tender the required witness fee and because the subpoena imposes an undue burden on a third party's constitutional and statutory interests.**

A.   *Improper Service*: **Plaintiff failed to tender the required witness fee and mileage with the subpoena.**

Any person subpoenaed to appear for deposition must be paid an attendance fee and mileage. 28 U.S.C. § 1821. To implement this statute, Rule 45(b)(1) defines proper service of subpoena to require both (1) service of the subpoena, and (2) the tendering of one day's attendance fee and mileage to the witness with the subpoena. FED. R. CIV. P. 45(b)(1).

In its transmittal letter, Plaintiff states that it will provide the fee and mileage. Exhibit 2 at 1. This is insufficient to perfect proper service. This Court has insisted upon strict compliance with the requirements of Rule 45, even in cases involving impecunious plaintiffs. In *Windsor* v. *Martindale*, 175 F.R.D. 665 (D. Colo. 1997), the Court noted that a witness fee is required for deposition subpoenas; only subpoenas *duces tecum* can be served without a fee. *Id.* at 670. Other courts in this Circuit have quashed subpoenas for improper service when the required fee and mileage are not tendered with the subpoena. See, *e.g.*, *Gameologist Group, LLC* v. *Scientific Games Int'l, Inc.*, No. 10-0015, 2010 WL 3827961 (D.N.M. Jul. 28, 2010) (unpublished) (quashing subpoena for this reason and citing *In re Dennis*, 330 F.3d 696, 704 (5th Cir. 2003); *Tedder* v. *Odel*, 890 F.2d 210, 211 (9th Cir. 1989); and *Tribulak* v. *Minirth–Meier–Rice Clinic*, 111 F.3d 135 (Table), 1997 WL 177456, at *2 (8th Cir. Apr. 15, 1997) ("[T]he district court did not abuse its discretion in quashing witness subpoenas which were not accompanied by the witness fee.").

Accordingly, the subpoena can and should be quashed on this basis alone.

B.   *Undue Burden*: **The subpoena imposes an undue burden on a third-party journalist's interests under the First Amendment and statutory privileges.**

The Court must quash a subpoena on a timely motion if it subjects a person to an undue burden. FED. R. CIV. P. 45(d)(3)(A)(iv). A motion is timely if filed within 14 days after service of a

subpoena or the time specified for compliance, whichever is earlier. FED. R. CIV. P. 45(d)(2)(B).

### 1.    The Motion is timely.

Plaintiff mailed Dodson a copy of the subpoena on July 18, 2019, albeit without the required witness fee. The subpoena schedules the deposition for August 15, 2019. Under these circumstances, the 14-day rule governs. Dodson filed this Motion on August 1, 2019—14 days after (improper) service.

### 2.    The subpoena creates an undue burden on Dodson for four reasons.

*First*, his deposition would produce only cumulative evidence. The newspaper article is self-authenticating under Rule 902(6) of the Federal Rules of Evidence, and the statement in the article attributed to Defendant is a party admission under Rule 801(d)(2)(A). The evidence is fully admissible right now. Plaintiff can use the statement at summary judgment or offer it at trial, and Defendant can admit or deny the statement.

So far, Defendant has not denied making the statement. In fairness, Defendant "neither admits nor denies," the statement is true in his Answer, Exhibit 4, Answer ¶¶ 8, 17, and this is treated as a denial for pleading purposes. FED. R. CIV. P. 8(b)(5). But, by summary judgment, Defendant will have to affirmatively deny the truth of the statement, or it will be treated as an undisputed material fact. FED. R. CIV. P. 56(e)(2). Of course, there is always the possibility that Defendant will admit the statement and argue that it is true—that he terminated the lease because of pressure from the city *and* for nonpayment of rent—such that Plaintiff was not placed in a false light. (Indeed, Defendant has asserted truth as an affirmative defense. Exhibit 5, Affirmative Defenses ¶ 1.) Yet, even if Defendant ultimately denies making the statement, this would raise a credibility question for the jury. *Hunt* v. *Cromartie*, 526 U.S. 541, 552 (1999); *Seamons* v. *Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000); *Hickle* v. *American Multi-Cinema, Inc.*, 927 F.3d 945, 951 (6th Cir. 2019). However the variable is adjusted, there is no meaningful evidentiary value gained in deposing Dodson during the discovery phase of this case.

The only possible purpose of a deposition is to obtain potential impeachment evidence for trial. If Defendant denies making the statement, then Plaintiff would presumably want to offer Dodson's testimony that the quotes in the article—including Defendant's statement—are accurate. But, before burdening an out-of-state witness with a deposition for this potentiality, Plaintiff should be required to first obtain a denial from Defendant by deposition, interrogatory, or a request to admit, and a representation from Defendant that he would object to the use of an affidavit from Dodson at trial attesting to the accuracy of the quotes in the article.

*Second*, the First Amendment provides Dodson with a qualified privilege, which Plaintiff has not overcome. Recognizing that compulsory process necessarily chills First Amendment freedoms, courts throughout the country—including in Colorado and Michigan—have recognized a qualified privilege for newsgatherers under the Press Clause of the First Amendment. *Re/Max Int'l, Inc.* v. *Century 21 Real Estate Corp.*, 846 F. Supp. 910, 911 (D. Colo. 1994) (citing *Branzburg* v. *Hayes*, 408 U.S. 665 (1972)); *In re Photo Marketing Ass'n Int'l*, 120 Mich. App. 527, 530–531 (1982); *NLRB* v. *Midland Daily News*, 151 F.3d 472, 475 (6th Cir. 1998); *Zerilli* v. *Smith*, 656 F.2d 705, 711–712 (D.C. Cir. 1981). To overcome this privilege, the party seeking the information has the burden of showing that (1) the information sought is centrally relevant to the case; and (2) the information is unavailable from other sources. *Re/Max*, 846 F. Supp. at 911; *In re Photo Marketing*, 120 Mich. App. at 531. Because the privilege preserves a constitutional interest, the party seeking the information must carry this burden with clear and convincing evidence. See *Midland Daily News*, 151 F.3d at 475 ("The [NLRB] has failed to convincingly persuade this court that the exercise of the subpoena power in this instance is the least extensive means by which [it] could reasonably expect to proceed, without unnecessarily burdening Midland's constitutional right to free expression.")

Dodson submits that his testimony cannot be fairly characterized as "centrally relevant" to the case, since it could only serve—at most—as impeachment evidence. The self-authenticating party admission that is already available to Plaintiff is the "centrally relevant" information.

Indeed, the impeachment-only quality of the testimony underscores that Plaintiff has not established that the information he seeks is unavailable from other sources. Plaintiff wants confirmation that the statement is accurate, but there is no evidence he has yet asked Defendant for the confirmation he seeks. See *Re/Max*, 846 F. Supp. at 912 (holding in part that the party seeking the privileged information had failed to overcome the privilege because the party's opponent had admitted making all but one statement, and the impeachment value of the contested statement was *de minimis*.) If Defendant provides the confirmation, then there is no need for impeachment evidence, such that Plaintiff could never overcome Dodson's qualified First Amendment privilege. Similarly, if the Defendant denies making the statement, then Plaintiff must still show that Dodson's testimony would be of substantial impeachment value at trial.

*Third*, even if Plaintiff could overcome the qualified privilege, he still could not roam beyond the four corners of the published article during the deposition. Reporters in Michigan enjoy a statutory privilege that protects them from being required to disclose unpublished information that they obtained from an informant while gathering news for a story. Michigan's shield law provides:

> A reporter or other person who is involved in the gathering or preparation of news for broadcast or publication shall not be required to disclose [1] the identity of an informant, [2] any unpublished information obtained from an informant, or [3] any unpublished matter or documentation, in whatever manner recorded, relating to a communication with an informant, in any inquiry authorized by this act, except an inquiry for a crime punishable by imprisonment for life when it has been established that the information which is sought is essential to the purpose of the proceeding and that other available sources of the information have been exhausted.

Mich. Comp. Laws § 767.5a(1) (numbering inserted for convenience). The shield law applies in civil cases. *In re DaimlerChrysler AG Securities Litigation*, 216 F.R.D. 395, 406–407 (E.D. Mich. 2003); *Marketos* v. *American Employers Insurance Co.*, 185 Mich. App. 179 (1990).[5] Important here,

---

[5]    But see *Compuware Corp.* v. *Moody's Investor Servs., Inc.*, 222 F.R.D. 124, 132 (E.D. Mich.

the *DaimlerChrysler* court explained that there are two types of informants: confidential

informants and named informants. *DaimlerChrysler*, 216 F.R.D. at 407 n.21. The Michigan statute

uses only the term "informant," capturing both kinds of informants. *Id.* at 407. Thus, the statute

even protects unpublished information obtained from a named source. *Ibid.* Accordingly, the

statute would protect any information Dodson may have received from his interview of Defendant

that was not published in the article.[6]

---

2004) (disagreeing with *DaimlerChrysler*). In *Compuware*, the district court held that the statutory
privilege does not apply in civil cases—a ruling in direct conflict with *DaimlerChrysler*. The
*Compuware* decision cites three reasons for its holding: (1) the privilege appears in the Code of
Criminal Procedure; (2) the legislative history suggests that the privilege applies only to criminal
proceedings; and (3) no Michigan court has applied the privilege in a civil case. *Ibid.* These
reasons do not withstand scrutiny, however, for two reasons.

First, Michigan courts do not look to legislative history unless the statute is ambiguous,
*Lansing Schs. Educ. Ass'n* v. *Lansing Bd. of Educ.*, 487 Mich. 349, 415 (2010), and the *Compuware*
court did not find the statute to be ambiguous. Second, a fair reading of *Marketos* shows that a
Michigan court has applied the statute in a civil case. In *Marketos*, a newspaper tried to shield
photographs taken from its own staff photographer, who could not be fairly characterized as an
"informant" under the statute. Although the Michigan Court of Appeals held that "the
Michigan press shield law is inapplicable and provides no protection for a request in a civil case
*for nonconfidential materials*," *Marketos*, 185 Mich. App. at 199 (emphasis added), but it also
explained what constitutes confidential materials: "the identities of informants and unpublished
information or communications between a journalist and an informant." *Ibid.* The implied
corollary to this holding is that the statute *does apply* in civil cases to shield unpublished materials
obtained from informants. *DaimlerChrysler* noted and applied this corollary.

[6]    Colorado's shield law is similar in scope, although not as absolute as Michigan's statute.
The Colorado statute protects from disclosure all information obtained by a newsperson that
remains unpublished, except: (1) information received at a press conference; (2) a reporter's
observation of serious felonies: (3) a reporter's observation of any other crime if the information
observed cannot be reasonably obtained by other means; and (4) when the information is directly
relevant to a substantial issue in the case, the information cannot be obtained by any other
reasonable means, and there is a strong interest in obtaining the information that outweighs the
constitutional interests of the reporter and the general public in nondisclosure. Colo. Rev. Stat.
§ 13-90-119(2)–(3).

*Fourth*, and again assuming *arguendo* that Plaintiff could overcome Dodson's qualified privilege, privacy torts sounding in defamation are generally subject to the one-year statute of limitations applicable to defamation claims. *Nichols* v. *Moore*, 334 F. Supp. 2d 944, 948–949 (E.D. Mich. 2004). This means Plaintiff's claim expired on August 16, 2017.[7] Causey should be

---

[7]   But see *Derderian* v. *Genesys Healthcare Sys.*, 263 Mich. App. 364 (2004). In *Derderian*, the Michigan Court of Appeals held that a false-light claim is subject to a three-year limitations period, even when it is premised upon defamatory statements. *Id.* at 385–386. In so holding, it did not acknowledge or attempt to distinguish *Meyer* v. *Hubbell*, 117 Mich. App. 699, 704–705 (1982), which held that a claim of intentional infliction of emotional distress—another invasion-of-privacy tort like false-light claims—are subject to the one-year limitations period for defamation claims if the emotional distress was allegedly caused by libel. Because of a quirk in Michigan's court rules regarding the nonprecedential nature of intermediate appellate decisions published before November 1990, *Derderian* currently controls unless overruled *en banc* or by the Michigan Supreme Court. See MICH. CT. R. 7.215(J).

Under the *Erie* doctrine, *Derderian* is one data point that must be considered in predicting how the Michigan Supreme Court would rule, *Downs* v. *Bel Brands USA, Inc.*, 613 F. Appx. 515, 518 (CA6 2015), *Stickley* v. *State Farm Mut. Auto Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007), but so too is *Meyer*. Of the two, this Court should rule that the Michigan Supreme Court is likely to adopt *Meyer* as the better precedent. *Meyer* is consistent with—while *Derderian* conflicts with—the general approach in Michigan of (1) ignoring pleading labels, and (2) holding plaintiffs to defamation pleading standards and defenses whenever a claim is premised upon a false and defamatory statement. See, *e.g.*, *Ireland* v. *Edwards*, 230 Mich. App. 607, 624 (1998) (citing *Hustler Magazine, Inc.* v. *Falwell*, 485 U.S. 46 (1988)). If *Derderian* were to stand, when read in conjunction with *Ireland*, it would create an anomalous result: a plaintiff would be *prohibited* from evading the pleading requirements for a defamation claim by recasting his claim as one for false light, but *could* evade the one-year limitations period for defamation claims by doing so. The Michigan Supreme Court would presumably reject *Derderian* as permitting an end-run around the limitations period for defamation actions, especially since *Derderian* relied on a pre-*Hustler* decision for its holding.

If the Court disagrees, and finds this issue to be dispositive of this Motion, Dodson respectfully requests that the Court certify to the Michigan Supreme Court, for resolution of this conflict of intermediate appellate authority, the question of whether the one-year limitations period applies to invasion-of-privacy claims premised upon alleged libel. *Anaconda Minerals Co.* v. *Stoller Chem. Co.*, 990 F.2d 1175, 1177 (10th Cir. 1993) (certification is appropriate when State law questions are unsettled and dispositive).

required to prove to the Eastern District of Michigan that his claim is viable before a third party is burdened with discovery that affects First Amendment interests and privileges.

## II.     PROTECTIVE ORDER: Alternatively, the Court should enter a protective order that protects a third-party journalist's newsgathering interests under the First Amendment.

If the Court declines to quash the subpoena, it should enter a protective order that cabins the deposition to areas that will not infringe upon Dodson's First Amendment and statutory interests. The Court has broad discretion under Rule 26(c) to fashion orders that fairly weigh the competing needs and interests of those affected by discovery. *Landco Equity Partners, LLC* v. *City of Colo. Springs*, 259 F.R.D. 510, 512 (D. Colo. 2009) (citing *Seattle Times Co.* v. *Rinehart*, 467 U.S. 20, 34 (1984)).

Here, to safeguard Dodson's constitutional and statutory interests, any deposition should be limited to one hour and the following topics: (1) his identity; (2) his employment for the *Bay City Times* during the relevant period in question; (3) his authorship of the article; and (4) confirmation that the quotes in the article are accurate. This will provide Plaintiff the opportunity to elicit the putative impeachment material, provide Defendant the opportunity to cross-examine Dodson on these topics, and protect Dodson's First Amendment and statutory interests.

## CONCLUSION

For these reasons, Dodson respectfully requests that the Court quash the subpoena for improper service or for imposing an undue burden on him, or enter a protective order that limits the time and scope of his deposition to protect his constitutional and statutory interests.

Respectfully submitted,

BALLARD SPAHR, LLP

Dated: August 1, 2019

*/s/ Steven D. Zansberg*

STEVEN D. ZANSBERG (Colo. No. 26634)
1225 17th Street, Suite 2300
Denver, Colorado 80202-5596
(303) 292-2400
zansbergs@ballardspahr.com
*Counsel for Andrew Dodson*

BUTZEL LONG, P.C.
Joseph E. Richotte (Mich. No. P70902)
Stoneridge West
41000 Woodward Avenue
Bloomfield Hills, Michigan 48304
(248) 258-1616
richotte@butzel.com
*Counsel for Andrew Dodson*
*\*Applying for Admission to District of Colorado*

BH2765763.1

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2019, I electronically filed the foregoing **THIRD PARTY ANDREW DODSON'S MOTION TO QUASH THIRD PARTY SUBPOENA (INCORPORATING AUTHORITIES)** with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following attorneys of record:

Victor J. Mastromarco, Jr., Esq.
The Mastromarco Firm PLC
1024 N. Michigan Ave.
Saginaw, MI  48602-4325
vmastromar@aol.com
*Attorneys for Plaintiff*

David L. Powers, Esq.
Smith, Martin, Powers & Knier, P.C.
900 Washington Ave.
P.O. Box 219
Bay City, MI  48707-0219
dpowers@smpklaw.com
*Attorneys for Defendant*

*s/  Steven D. Zansberg*
Steven D. Zansberg